UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RAFAEL SALAZAR,

    Plaintiff,

vs.                                     CASE NO. 8:13-cv-02002-EAK-TBM

AMERICAN SECURITY INSURANCE
COMPANY,

    Defendant.

_____/

**ORDER ON DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

THIS CAUSE is before the Court on Defendant's Motion for Partial Summary Judgment and Incorporated Memorandum of Law against Plaintiff as to Count III of the Amended Complaint. The Court, having considered the motion, response, and reply, concludes that Defendant's motion with respect to Count III is denied.

**PROCEDURAL HISTORY**

Plaintiff filed his Complaint (Doc. 2) on August 1, 2013. Count I of the complaint alleged Breach of Contract, Count II requested Declaratory Judgment, and Count III alleged Tortious Interference with a Contractual Relationship.

Defendant filed a Motion to Dismiss Counts I, II, and III of the Complaint on August 9, 2013 (Doc. 4). In response, Plaintiff filed an Amended Complaint on August 21, 2013 (Doc. 10). Defendant then filed the Motion to Dismiss Counts II and III of the First Amended Complaint on Motion to Strike Portion of Count I of the First Amended

Complaint and Incorporated Memorandum of Law on September 4, 2013 (Doc. 11). Plaintiff filed his Response in Opposition to Defendant's Motion to Dismiss Counts II and III of the First Amended Complaint and Motion to Strike Portion of Count I of the First Amended Complaint and Incorporated Memorandum of Law on September 18, 2013 (Doc. 13).

The Court granted Defendant's Motion to Dismiss Count II of Plaintiff's Amended Complaint and denied Defendant's Motion to Strike Portions of Count I on March 12, 2014 (Doc. 19). The Court also denied Defendant's Motion to Dismiss Count III (Doc. 19).

Defendant filed a Motion for Partial Summary Judgment and Incorporated Memorandum of Law as to Count III of the Amended Complaint on June 27, 2014 (Doc. 31). Plaintiff filed the Response to Defendant's Partial Motion for Summary Judgment on July 11, 2014 (Doc. 36). Defendant filed the Reply in Support of Its Motion for Partial Summary Judgment on July 25, 2014 (Doc. 40).

## BACKGROUND

Plaintiff, RAFAEL SALAZAR, had a mortgage with Chase Home Finance LLC ("Lender") that required him to maintain hazard insurance, which he purchased from Defendant, AMERICAN SECURITY INSURANCE COMPANY (Doc. 10). On September 17, 2011, Plaintiff's property was damaged by sinkhole activity while the policy was in full force and effect (Doc. 10).

Plaintiff reported the loss, and Defendant selected an engineering firm, Central Florida Testing Laboratories, Inc. ("CFTL") to investigate the cause of the loss (Doc. 31).

The investigation confirmed that the loss was caused by sinkhole activity that was covered under the policy (Doc. 31). On March 8, 2012, CFTL prepared an estimate with recommendations for subsurface repairs to remediate the sinkhole activity, which included compaction grouting and exterior chemical grouting (Doc. 31).

After receiving the estimate, Plaintiff retained Bay Area Sinkhole Investigation & Civil Engineering ("BASIC") (Doc. 31). On March 21, 2012, Defendant sent a letter to Plaintiff that asked for a signed contract to perform the subsurface sinkhole repairs with a licensed contractor (Doc. 31). BASIC completed its peer review for the property and recommended compaction grouting and chemical grouting on both the interior and the exterior (Doc. 31). Following BASIC's recommendations, Plaintiff entered into a contract with Justin James, Professional Engineer, and Tracy Harris, Licensed General Contractor, to performed the repairs on September 24, 2012 (Doc. 10-2).

Defendant rejected BASIC's recommendations and invoked mandatory neutral evaluation that was non-binding (Doc. 31). On February 28, 2013, the neutral report recommended compaction grouting and exterior grouting (Doc. 32-10). As a result, the parties disputed whether the subsurface repair work needed interior chemical grouting (Doc. 36). On April 11, 2013, Defendant sent Plaintiff a letter that demanded a signed contract from CFTL to receive payment for the repairs (Doc. 32-11).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving

party bears the initial burden of stating the basis for its motion for summary judgment and identifying those portions of the record "which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party meets its burden if it demonstrates "an absence of evidence to support the nonmoving party's case." *Id.* at 325. The burden then shifts to the nonmoving party to identify specific facts that demonstrate a genuine issue of material fact in order to avoid summary judgment. *Id.* at 324.

An issue of fact is "genuine" only if a reasonable jury, after considering the evidence presented, could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A factual issue is "material" if it might affect the outcome of the trial under the governing substantive law. *Id.* at 248; *Hickson Corp. v. Northern Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). When ruling on a motion for summary judgment, the Court must view all inferences to be taken from the facts "in the light most favorable to the party opposing the motion." *U.S. v. Diebold*, 369 U.S. 654, 655 (1962). The weighing of evidence, the determination of credibility, and the drawing of reasonable inferences from the facts are all functions of the jury, not the judge. *Anderson*, 477 U.S. at 255. Therefore, if determination of the case rests on deciding which competing version of the facts and events is true, then summary judgment is inappropriate, and the case should be submitted to the jury. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987).

## DISCUSSION

Partial summary judgment of Plaintiff's Count III is denied because Plaintiff has presented material facts that may affect the outcome of a trial. Whether Defendant, in the absence of privilege, intentionally and unjustifiably caused Plaintiff to breach the mortgage contract is a factual issue for the jury.

Under Florida law, the elements of tortious interference with a contractual relationship are: 1) the existence of a contract; 2) Defendant's knowledge of the contract; 3) Defendant's intentional procurement of the contract's breach; 4) absence of any justification or privilege; and 5) damages resulting from the breach. *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998).

In the Amended Complaint, Plaintiff claimed that a mortgage contract existed between Plaintiff and Lender and Defendant was aware of the contract. Plaintiff claimed that Defendant intentionally withheld the benefits owed under the contract without justification or privilege, and the failure to pay the claim has caused Plaintiff to suffer damages.

Plaintiff is not arguing that he did not fulfill his mortgage obligations. Instead, Plaintiff alleges that Defendant interfered with his mortgage contract by not paying the claim to properly repair the sinkhole damage, which is a breach of the terms in his mortgage. The mortgage requires Plaintiff to maintain insurance on the subject property and, in the event of a loss, the Lender (mortgagee) is authorized to collect and apply the insurance proceeds at Lender's option either to restore the property or to apply to the sums secured by the mortgage. The terms of the mortgage state that the "Borrower shall

keep the Property in good repair and shall not commit waste or permit impairment to the deterioration of the Property."

Both parties presented arguments using *McKinney-Green, Inc. v. Davis*, which said, "[t]he gravamen of an action for tortious interference with a contractual relationship is the malicious interference by a third party, with a contract between other persons, whereby one contracting party is induced to breach the contract to the injury of the other." 606 So. 2d 393, 397 (Fla. 1st DCA 1992). Plaintiff argues that Defendant is a third-party to the mortgage contract, which is between Plaintiff and Lender, and Defendant induced Plaintiff to breach the contract to the injury of the Lender by requiring Plaintiff to enter into a repair contract that is insufficient. Defendant argued that Plaintiff's claim of tortious interference is based on the "illogical" premise that Defendant induced Plaintiff to breach the mortgage with the Lender because the claim would require Defendant to induce the Lender to breach the mortgage to the injury of Plaintiff.

According to *McKinney-Green*, tortious interference requires malicious interference by a non-contracting party with an agreement between other parties where "one of the parties is induced to breach the contract" and causes an injury to "the other contracting party." *Id.* at 398. Here, Defendant is a non-contracting party in regards to the mortgage contract, which is between Plaintiff and Lender. Whether Defendant maliciously interfered with Plaintiff's mortgage contract depends on whether Defendant failed to proceed in good faith to repair the property under the terms of the insurance contract. All parties to a contract have the obligation to proceed in good faith, which

should be determined by a jury. *See Burger King Corp. v. Ashland Equities, Inc.*, 161 F. Supp. 2d 1331, 1336–37 (S.D. Fla. 2001).

The insurance policy states that the insured must provide "a contract for the performance of building stabilization or foundation repairs," and when this occurs, the insurer will "settle the loss." Defendant claims that Plaintiff did not comply with the insurance provisions to provide a contract in accordance with the recommendations of the engineer that Defendant selected. However, on September 24, 2012, Plaintiff entered into a contract with an engineer and a licensed contractor to repair the sinkhole damage, which complied with the policy's provisions.

The neutral evaluation process under section 627.7074 of the Florida Statutes is non-binding and does not require Plaintiff to accept the results. The Florida Supreme Court confirmed that "[t]he sinkhole statutes appear[ing] in chapter 627 . . . was designed to provide a framework for insurance companies to follow when encountering specific types of claims . . . involving sinkhole damage. The application of a specific provision within that scheme to the evidentiary context is both misguided and inappropriate." *Universal Ins. Co. of N. Am. v. Warfel*, 82 So. 3d 47, 57 (Fla. 2012).

Here, Defendant's argument that Plaintiff failed to comply with the policy terms is not persuasive. Further, Plaintiff identified specific facts that are in dispute between the parties, such as the need for interior chemical grouting to restore the property. This demonstrates a genuine issue of material fact that should be decided by a jury. Hence, if a jury finds that Defendant withheld payment for the reason of undervaluing the claim, the jury may find that Defendant tortiously interfered with the mortgage agreement by

causing Plaintiff to permit impairment or deterioration of the property. Accordingly, it is **ORDERED** that Defendant's Motion for Partial Summary Judgment on Count III is **DENIED**.

**DONE** and **ORDERED** in Chambers at Tampa, Florida, this ___ day of September, 2014.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.